IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLLEEN WITMER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALBANY MOLECULAR RESEARCH, INC., THOMAS E. D'AMBRA, DAVID H. DEMING, KENNETH P. HAGEN, GERARDO GUTIÉRREZ FUENTES, ANTHONY J. MADDALUNA, FERNANDO NAPOLITANO, WILLIAM S. MARTH, KEVIN O'CONNOR, THE CARLYLE GROUP, GTCR LLC, UIC PARENT CORPORATION, and UIC MERGER SUB, INC., <br><br> Defendants. | Case No. _____ <br><br> JURY TRIAL DEMANDED <br><br> CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 6, 2017 (the "Proposed Transaction"), pursuant to which Albany Molecular Research, Inc. ("AMRI" or the "Company") will be acquired by affiliates of The Carlyle Group and GTCR LLC.

2. On June 5, 2017, AMRI's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with UIC Parent Corporation and UIC Merger Sub, Inc. (collectively with UIC Parent Corporation, The Carlyle Group, and GTCR LLC, the "Buyers"). Pursuant to the terms

of the Merger Agreement, shareholders of AMRI will receive $21.75 per share in cash.

3. On July 3, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AMRI common stock.

9. Defendant AMRI is a Delaware corporation and maintains its principal executive offices at 26 Corporate Circle, Albany, New York 12212. AMRI's common stock is traded on

the NasdaqGS under the ticker symbol "AMRI."

10. Defendant Thomas E. D'Ambra ("D'Ambra") is a director of AMRI and has served as Chairman of the Board since January 2014. D'Ambra co-founded the Company in 1991 and served as its President and Chief Executive Officer ("CEO") until 2013.

11. Defendant David H. Deming ("Deming") is a director of AMRI.

12. Defendant Kenneth P. Hagen ("Hagen") is a director of AMRI.

13. Defendant Gerardo Gutiérrez Fuentes ("Gutiérrez") is a director of AMRI.

14. Defendant Anthony J. Maddaluna ("Maddaluna") is a director of AMRI.

15. Defendant Fernando Napolitano ("Napolitano") is a director of AMRI

16. Defendant William S. Marth ("Marth") is a director of AMRI and has served as President and CEO of the Company since January 2014.

17. Defendant Kevin O'Connor ("O'Connor") is a director of AMRI.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant The Carlyle Group is a global alternative asset manager.

20. Defendant GTCR LLC is a private equity firm.

21. Defendant UIC Parent Corporation is a Delaware corporation and a party to the Merger Agreement.

22. Defendant UIC Merger Sub, Inc. is a Delaware corporation, a wholly-owned subsidiary of UIC Parent Corporation, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of AMRI (the "Class"). Excluded from the Class are defendants herein and

any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of June 5, 2017, there were approximately 42,959,065 shares of AMRI common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

30.  AMRI is a global contract research and manufacturing organization that has been working with the life sciences sector and pharmaceutical industry to improve patient outcomes and the quality of life for more than two decades.

31.  With locations in North America, Europe, and Asia, the Company provides customers with a wide range of services and cost models.

32.  AMRI has a diversified portfolio of customers – more than 300 from large pharma, biotech, specialty, and adjacent spaces and have high pipeline visibility for the future.

33.  According to its website, the Company is well positioned to capture what it believes are attractive growth opportunities in a market that continues to benefit from outsourcing.

34.  On May 9, 2017, AMRI issued a press release wherein it reported its financial and operating results for the first quarter ended March 31, 2017.  The Company reported first quarter total revenue of $163.8 million, up 55% from 2016.  Additionally, first quarter adjusted EBITDA was $24.0 million, up 83% from 2016.  With respect to the financial results, Individual Defendant Marth commented:

> We delivered an excellent first quarter, driven by 56 percent growth in contract revenue, 7 percent on an organic basis, including double digit organic growth in our Discovery, Development and Analytical Services (DDS) and Active Pharmaceutical Ingredient (API) businesses[.] GAAP income from operations increased $6 million, a 150% increase quarter over quarter, and adjusted EBITDA increased $11 million, an 83% increase quarter over quarter, illustrating strong and efficient execution and leverage across our operations. We are confident that these trends will continue through the year and are maintaining our outlook for 2017, which includes 28% growth of contract revenue, 7% growth of organic contract revenue, and double digit earnings growth at the midpoint.

35.     Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

36.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

37.     Further, the Company must promptly advise the Buyers of any proposals or inquiries received from other parties.

38.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants the Buyers a "matching right" with respect to any "Superior Proposal" made to the Company.

39.     Further locking up control of the Company in favor of the Buyers, the Merger Agreement provides for a "termination fee" of $35 million payable by the Company to the Buyers if the Individual Defendants cause the Company to terminate the Merger Agreement.

40.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41.     The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

42. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

44. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

45. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

46. First, the Proxy Statement omits material information regarding AMRI's financial projections and the financial analyses performed by the Company's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse").

47. With respect to AMRI's financial projections, the Proxy Statement fails to disclose: (i) stock-based compensation; (ii) taxes; (iii) change in net working capital; (iv) capital expenditures; and (v) a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to Credit Suisse's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the illustrative terminal value of AMRI; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.75% to 9.75%.

49. With respect to Credit Suisse's *Premiums and Selected Leveraged Buyout Transactions* and *Premiums in Selected All-Cash Transactions* analyses, the Proxy Statement fails to disclose: (i) the transactions observed by Credit Suisse in the analyses; and (ii) the premiums paid in such analyses.

50. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

51. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of AMRI's Board of Directors"; (iv) "Opinion of the Special Committee's Financial Advisor"; and (v) "Projected Financial Information."

52. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

53. Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of AMRI's officers and directors, including who participated in all such communications.

54. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of AMRI's Board of Directors"; and (iv) "Interests of AMRI's Directors and Executive Officers in the Merger."

56. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Credit Suisse.

57. For example, the Proxy Statement fails to disclose the "other investment banking and financial services" Credit Suisse has provided to AMRI, the Buyers, and their affiliates, as well as the amount of compensation received by Credit Suisse for such services.

58. Similarly, the Proxy Statement fails to disclose the amount of compensation received or to be received by Credit Suisse for serving as "lenders to members of Carlyle and GTCR" and the nature of such lender services.

59. The Proxy Statement also fails to disclose Credit Suisse's holdings in AMRI's, the Buyers', and their affiliates' stock.

60. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of AMRI's Board of Directors"; and (iv) "Opinion of the Special Committee's Financial Advisor."

62. Fourth, the Proxy Statement fails to disclose whether any confidentiality agreements executed by AMRI and the prospective bidders, particularly "Party D," contained

"don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

63. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

64. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; and (iii) "Recommendation of AMRI's Board of Directors."

65. Fifth, the Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

66. For example, the Proxy Statement fails to disclose how discussions concluded between the Company's representatives and "Party G," which submitted an offer to acquire the Company for *$22.50 per share in cash* – significantly higher than the merger consideration – on June 3, 2017, and whether Party G subsequently contacted the Company after its discussion with Credit Suisse on June 5, 2017.

67. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; and (iii) "Recommendation of AMRI's Board of Directors."

68. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to AMRI's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and AMRI

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  AMRI is liable as the issuer of these statements.

71. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

72. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

74. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

75. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

76. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyers

77. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78. The Individual Defendants and the Buyers acted as controlling persons of AMRI within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of AMRI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

79. Each of the Individual Defendants and the Buyers was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

80. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were

thus directly involved in the making of the Proxy Statement.

81. The Buyers also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

82. By virtue of the foregoing, the Individual Defendants and the Buyers violated Section 20(a) of the 1934 Act.

83. As set forth above, the Individual Defendants and the Buyers had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 13, 2017                                **RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800